378 A.2d 293

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Alfred Bruce PINNEY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Sept. 24, 1976.

Decided Oct. 7, 1977.

H. David Rothman, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Robert L. Eberhardt, Charles W. Johns, Asst. Dist. Attys., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and PACKEL, JJ.

## OPINION OF THE COURT

MANDERINO, Justice.

On December 14, 1972, appellant, Alfred Pinney, was tried by a judge sitting without a jury and found guilty of possession of narcotics and dangerous drugs, placed on one year's probation, and ordered to pay the costs of his prosecution. Appellant's post-verdict motions in arrest of judgment and for a new trial were denied. The Superior Court, one judge dissenting, affirmed appellant's conviction. *Commonwealth v. Pinney*, 236 Pa.Super. 309, 344 A.2d 596 (1975).

Appellant contends here, as he did in the Superior Court, that his conviction should be reversed because the drugs introduced into evidence were the product of an unlawful search. Specifically, appellant argues that the search of his person violated his constitutional right to be free from unreasonable searches; thus the trial judge was in error in denying his motion to suppress the drugs found in appellant's possession. We agree, and therefore reverse the judgment of sentence.

On December 9, 1971, a Pennsylvania state trooper was murdered and two Altoona police officers were wounded. The descriptions and names of the two suspects were broadcast. The following morning, a bus driver telephoned the state police when he observed three men boarding his bus in Altoona, two of whom he thought matched the broadcast descriptions. Appellant was one of the passengers. Three plain clothed police officers, armed with complete descriptions of the two suspects, boarded the vehicle at its destination in Monroeville, approximately 70 miles from Altoona, and immediately proceeded to the rear of the bus where appellant and his two companions were seated. The officers

identified themselves as police, requested that the three youths stand, and asked for identification. Despite the fact that all three youths produced identification inconsistent with the names of the murder suspects, one of the officers conducted a pat-down search of the appellant and felt a bulge in appellant's coat pocket. The officer ordered appellant to empty his pockets. The bulge, which the officer testified he believed might be a small automatic weapon, was a two-inch by four-inch plastic bag of marijuana and six foil packets containing 571 diamphetamine tablets. The appellant was removed from the bus, and a subsequent check of identifications cleared the appellant and his two companions of any complicity in the police murder.

The prosecution first contends that the search of appellant's person was constitutionally valid as incident to a lawful arrest. Such a search is a well settled exception to the Fourth Amendment's warrant requirement. *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973). Whether the arrest was constitutionally valid depends on whether, at the time the arrest was made, the officers had probable cause to make it. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Commonwealth v. Dickerson,* 468 Pa. 599, 605, 364 A.2d 677, 680 (1976). Probable cause existed if, at the time appellant was detained by the police, the facts and circumstances within the officers' knowledge, and of which they had reasonably trustworthy information, were sufficient to warrant a prudent man in believing that the appellant had committed or was committing an offense. *Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Commonwealth v. Levesque,* 469 Pa. 118, 364 A.2d 932, 937 (1976); *Commonwealth v. Culmer,* 463 Pa. 189, 195, 344 A.2d 487, 490 (1975). Mere suspicion is not enough; the burden is on the Commonwealth to show, with reasonable specificity, facts sufficient to establish that probable cause for the arrest existed. *Commonwealth v. Jones,* 457 Pa. 423, 322 A.2d 119 (1974); *Commonwealth v. Holton,* 432 Pa. 11, 247 A.2d 228 (1968).

The existence or nonexistence of probable cause, as well as the broader question of the constitutionality of a warrantless search, can only be decided in the concrete factual context of the individual case. *See Sibron v. New York,* 392 U.S. 40, 59, 88 S.Ct. 1889, 20 L.Ed.2d 917, 932 (1968). While this Court does not sit to appraise contradictory factual questions, it is this Court's duty to make an independent examination of probable cause, apart from any conclusions drawn by a trial judge or other appellate court, to ensure that the constitutional criteria established to safeguard Fourth Amendment rights have been respected. *See Ker v. California,* 374 U.S. 23, 34, 83 S.Ct. 1623, 10 L.Ed.2d 726, 738 (1963).

We conclude that the arresting officers lacked probable cause to arrest appellant. The officers had detailed descriptions of the two men wanted for the police murder, and appellant fit neither description. One suspect was described as having long, shaggy, black hair. Appellant's hair, as one officer testified, was light brown and could, in places, even be considered blond. Suspect number two was described as five feet eleven inches tall, one hundred eighty pounds, long, thin hair, with a mark on the left side of his face. Appellant was four inches shorter, thirty pounds lighter, and had no facial marks whatsoever. We find it difficult to conclude that appellant sufficiently resembled either suspect number one or suspect number two to give the officer probable cause for any arrest. *Hill v. California,* 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1970), relied on by both the prosecution and the Superior Court, is distinguishable. In *Hill,* the Supreme Court observed that when the police have probable cause to arrest one person, and *reasonably* mistake a second party for the first party, the arrest of the second party is a valid arrest. The person mistakenly arrested in *Hill* fit the description of the man the police were seeking. 401 U.S. at 803 & n.6, 28 L.Ed.2d at 489 & n.6. In this case, the disparities in physical make-up between appellant and either of the suspects sought by the police made it unreasonable to mistake appellant for the suspects. The police also had the

names of the suspects. When appellant and his companions were asked to produce identification they did so promptly, and the identifications shown the officers were inconsistent with the names of the suspects. There was no testimony that appellant or either of his companions in any way acted suspiciously. Appellant was merely riding a bus. The only resemblance appellant had to the two suspects was that he was white, young and had long hair. If the police officers were justified in searching appellant under these circumstances, we see no reason why any young, long-haired youths within 70 miles or more of Altoona, traveling in a group of two or three, could not have been stopped and likewise validly searched in connection with this particular crime. This we cannot accept. The Fourth Amendment prohibition against unreasonable searches and seizures, made applicable to the states through the Fourteenth Amendment's due process clause, gives every person in this Commonwealth the right to be free from unreasonable searches and seizures. The amendment protects an individual's reasonable expectation of privacy from unjustifiable governmental intrusions. See *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Mimms,* 471 Pa. 546, 370 A.2d 1157 (1977). We are fully cognizant of the fact that the police here were seeking two extremely dangerous men, and may have acted in good faith in searching appellant. But good faith is not enough; otherwise, people would be secure in their persons and effects only at the discretion of the police. *See Beck v. Ohio, supra,* 379 U.S. at 97, 13 L.Ed.2d at 148. Having lacked probable cause to arrest appellant, the search of his person which produced these drugs cannot be justified as incident to a lawful arrest.

The prosecution also argues that even if this Court concludes that the search was not incident to a lawful arrest, it can be justified on the basis of the "stop and frisk" concept. A "stop and frisk," no less than a "search and seizure," is within the ambit of Fourth Amendment protection. *Terry v. Ohio,* 392 U.S. 1, 16, 88 S.Ct. 1868, 20 L.Ed.2d 889, 903 (1968). *Commonwealth v. Hicks,* 434 Pa. 153, 253

A.2d 276, 278–79 (1969). In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court recognized that in view of the government's interest in the detection and prevention of crime, "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906–07. *Terry* justified the search on the ground that it protects a police officer's safety. The United States Supreme Court was careful to point out, however, in both *Terry* and the companion case of *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968), that in the case of a self-protective search for weapons, a police officer must be able to point to particular facts from which he could reasonably infer that the individual was armed and dangerous. *See* 392 U.S. at 64, 20 L.Ed.2d at 935. In *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969), we interpreted *Terry* and *Sibron* as holding that an officer can conduct a carefully circumscribed search for weapons of a person's outer clothing only if the officer observes "unusual and suspicious behavior" on the part of the individual which leads him reasonably to conclude that criminal activity is afoot. 434 Pa. at 158–59, 253 A.2d at 279. *See also Commonwealth v. Sams*, 465 Pa. 323, 350 A.2d 788 (1976); *Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973). Moreover, even though, for safety reasons, a "search" of the outer clothing is justifiable, any "search" of articles discovered as a result of the pat-down must also be justified by the circumstances which gave rise to the original interference. *Terry v. Ohio*, 392 U.S. at 19–20, 88 S.Ct. 1868, 20 L.Ed.2d at 905.

■ The record before us does not disclose facts sufficient to meet these constitutionally required standards. Appellant engaged in no "unusual and suspicious" behavior which might have reasonably led the police officers to conclude that criminal activity was afoot. There was nothing that would lead to the conclusion that appellant was "armed and

dangerous." The prosecution argues that the "unusual and suspicious" behavior requirement was satisfied when the police tentatively identified the appellant as the suspect in the shooting. We think it would blur accepted usages and meanings in the English language to assert that one who in only a very general way resembles a police suspect—white, young, and long haired—is acting "unusually or suspiciously." These officers had hardly a suspicion that appellant was the suspect they were after. Without particular facts from which to infer that criminal activity has or is about to be committed, and an individual is armed and dangerous, we have consistently held that a stop and frisk is not constitutionally justified. *See e. g., Commonwealth v. Sams*, 465 Pa. 323, 350 A.2d 788 (1976); *Commonwealth v. Pegram*, 450 Pa. 590, 301 A.2d 695 (1973); *Commonwealth v. Pollard*, 450 Pa. 138, 299 A.2d 233 (1973); *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1969); *Commonwealth v. Berrios*, 437 Pa. 338, 263 A.2d 276 (1969). We so hold in this case also.

Since we have concluded that the police officers' action in searching appellant was unjustified at its inception, we need not address the second issue which *Terry v. Ohio* would otherwise present—whether the police officer's further examination of the plastic bag and foil wrappers, after it had become obvious that this "bulge" in appellant's coat was not a weapon, was unconstitutional in that the search was not reasonably related in scope to the circumstances which justified the governmental interference in the first place. *See Commonwealth v. Freeman*, 222 Pa.Super. 178, 183, 293 A.2d 84, 86 (1972); *Commonwealth v. Meadows*, 222 Pa.Super. 202, 207, 293 A.2d 365, 367 (1972).

Accordingly, the contraband seized should have been suppressed.

Judgment of sentence reversed and a new trial granted.

NIX, J., concurs in the result.