**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Steven George RACHAU.**

Commonwealth Court of Pennsylvania.

Argued Dec. 5, 1995.

Decided Jan. 19, 1996.

Gregory A. Stuck, for appellant.

No appearance for appellee.

Before PELLEGRINI and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

FRIEDMAN, Judge.

The Commonwealth of Pennsylvania (Commonwealth) appeals from: (1) an order of the Court of Common Pleas of Northumberland County (trial court), dated May 13, 1994, granting Steven George Rachau's (Defendant) Petition for Writ of Habeas Corpus and dismissing all charges against him; and (2) an order of the trial court, dated June 1, 1994, denying the Commonwealth's Motion for Reconsideration.

On September 5, 1993, while patrolling an area on the Susquehanna River known as "Lake Augusta,"[1] several officers of the Pennsylvania Fish and Boat Commission (PFBC) observed Defendant operating a motorboat in a clockwise manner, contrary to the "rules of the road" established for water traffic upon lakes and other "water impoundments" in the Commonwealth. *See* former Pennsylvania Code section 99.1(b), 58 Pa. Code § 99.1(b) (current version at 58 Pa. Code § 103.3(a)).[2] Based upon this apparent violation, as well as Defendant's perceived failure to properly display a valid registration sticker, the PFBC officers pursued Defendant and pulled him over.

Upon boarding Defendant's boat, the officers observed that there was, in fact, a valid registration sticker on the side of the boat. However, the officers also noticed the odor of alcohol coming from Defendant and, upon examination of the boat, found numerous empty beer cans. Based upon their observations, the PFBC officers asked Defendant to perform several field sobriety tests, which he failed to complete successfully. The officers then transported Defendant to a D.U.I. testing center for a chemical breath test, the results of which showed Defendant's blood alcohol level to be a 0.103%.

Consequently, Defendant was charged with several violations of the Fish and Boat Code,[3] including two counts of Operating a Watercraft under the Influence of Alcohol or a Controlled Substance, 30 Pa.C.S. § 5502(a)(1) and (4), one count of Reckless

---

1. "Lake Augusta" is located at Sunbury, Pennsylvania, where the west and north branches of the Susquehanna River meet. The "lake" is formed by means of an inflatable dam, known as the Fabridam, consisting of several rubber "bags" which were specially designed for the purpose of creating a pool of water to be used for various water sports such as boating and waterskiing. The rubber "bags," inflated only from late May until late September, enclose approximately 3,060 acres of water.

2. Former section 99.1(b) of the Pennsylvania Code states:

> Motorboats under way on water impoundments—dams, reservoirs, lakes, and the like—in areas not marked by well-defined channels,

canals, rivers or stream courses may operate in a counterclockwise fashion insofar as it is reasonably possible.

58 Pa.Code § 99.1(b).

Effective June 4, 1994, section 99.1(b), now found at section 103.3(a), was amended to read: "Motorboats under way on water impoundments ... *shall* operate in a counterclockwise fashion insofar as reasonably possible." 58 Pa.Code § 103.3(a) (emphasis added). However, because we must apply the law in effect at the time of the alleged violation in question, September 5, 1993, our discussion focuses on former section 99.1(b).

3. 30 Pa.C.S. §§ 101–7312.

Operation of a Watercraft, 30 Pa.C.S. § 5501(a), and one count of Negligent Operation of a Watercraft, 30 Pa.C.S. § 5501(b), as well as one violation of general boating regulations, as found in former Pennsylvania Code section 99.1(b), 58 Pa.Code § 99.1(b).

On October 4, 1993, a preliminary hearing was held, at which all five charges against Defendant were bound over to the trial court. On February 23, 1994, Defendant filed a Petition for Writ of Habeas Corpus, alleging that the area of the Susquehanna River designated as "Lake Augusta" is not, in fact, a lake, and therefore, that the PFBC officers did not have probable cause to stop Defendant for violating the rules of the road for a lake.

On May 13, 1994, after several hearings on the matter, the trial court granted Defendant's Petition for Writ of Habeas Corpus and dismissed all charges against him. The trial court concluded that "Lake Augusta" is not a lake, but merely a temporary body of water created by an inflatable dam that "backs up" the water of the Susquehanna River; therefore, the PFBC officers did not have grounds to stop Defendant's boat based upon his failure to follow the rules of the road for traffic upon a lake, as set forth in former section 99.1(b) of the Pennsylvania Code. (Trial court's op. at 5.) Moreover, the trial court concluded that, since "a person is charged with seeing what is clearly there," the PFBC officers' failure to perceive the valid registration sticker on Defendant's boat was also insufficient to provide them with probable cause[4] to stop and detain Defendant. (Trial court's Op. at 6.)

On May 19, 1994, the Commonwealth filed a Motion for Reconsideration of the trial court's order, arguing that, even if the court found that "Lake Augusta" is not a lake within the meaning of former Pennsylvania Code section 99.1(b), it is still a "water impoundment" as defined in that section. On June 1, 1994, the trial court denied the Commonwealth's Motion, reasoning that former section 99.1(b) specifically exempts motorboats on rivers and streams from its scope, and that the use of the word "may" indicates that the section is merely a guideline, not a mandatory fashion of travel.

This appeal presents two issues for our review: (1) whether PFBC officers have "articulable and reasonable" suspicion to stop and detain a motorboat operator and his passengers based on violation of former section 99.1(b) of the Pennsylvania Code, 58 Pa.Code § 99.1(b), where the operator navigated his motorboat in a clockwise direction; and (2) whether PFBC officers have "articulable and reasonable" suspicion to stop and detain a motorboat operator and his passengers based on failure to display a valid registration sticker where the operator had, in fact, properly displayed a valid sticker which the officers had apparently failed, or were unable, to see.

■ On appeal,[5] the Commonwealth first argues that "Lake Augusta" is, in fact, a lake, attacking each of the sources to which the trial court looked for guidance in defining the term "lake" here as either inapplicable or

4. We note that, although the terms have, in practice, been used interchangeably, *see, e.g., Commonwealth v. Lopez,* 415 Pa.Superior Ct. 252, 609 A.2d 177, *appeal denied,* 533 Pa. 598, 617 A.2d 1273 (1992), the "articulable and reasonable" grounds necessary to justify an investigative stop are less stringent than the "probable cause" necessary to make an arrest or conduct a search. *In the Interest of S.D.,* 429 Pa.Superior Ct. 576, 633 A.2d 172 (1993). Therefore, although the trial court used the term "probable cause," we will refer to "articulable and reasonable" suspicion as the correct standard for determining the propriety of an investigative stop.

5. The method for testing a finding of a *prima facie* case prior to trial in this Commonwealth is by a writ of habeas corpus. *Commonwealth v. Hetherington,* 460 Pa. 17, 331 A.2d 205 (1975).

Our scope of review on a writ of habeas corpus filed to test a pretrial finding of a *prima facie* case is limited to deciding whether a *prima facie* case was, in fact, established at the preliminary hearing. *Commonwealth v. Kowalek,* 436 Pa.Superior Ct. 361, 647 A.2d 948 (1994).

Proof of guilt beyond a reasonable doubt is not required in order to establish a *prima facie* case at the preliminary hearing. Rather, the Commonwealth must show "sufficient probable cause" that the defendant committed the offense, and the evidence should be such that, if presented at trial and accepted as true, the judge would be warranted in allowing the case to go to a jury. *Kowalek* at 364, 647 A.2d at 949; *Commonwealth v. Lynch,* 270 Pa.Superior Ct. 554, 564, 411 A.2d 1224, 1230 (1979).

incorrectly applied. In particular, the Commonwealth contends that the trial court's definition of a lake is based solely on the description of a natural lake, ignoring the existence of man-made or artificial lakes, which have been recognized by the legislature in its definition of a "Body of Water" in the Dam Safety and Encroachment Act.[6] Consequently, the Commonwealth contends that the trial court erred in granting Defendant's Petition for Writ of Habeas Corpus.

■ Alternatively, the Commonwealth argues that, even if "Lake Augusta" is not a lake, it is nonetheless a water impoundment within the meaning of former Pennsylvania Code section 99.1(b). Specifically, the Commonwealth maintains that "Lake Augusta" is a dam, as defined by section 3 of the Dam Safety and Encroachment Act, 32 P.S. § 693.3,[7] and is, therefore, subject to the rules of the road for motorboat operation. Consequently, the Commonwealth contends that the trial court erred in denying the Commonwealth's Motion for Reconsideration.[8]

■ Although the arguments presented by the Commonwealth encourage us to do so, we need not become entangled in a detailed analysis, like that undertaken by the trial court, of whether "Lake Augusta" is a lake, a dam or some other form of water impoundment. In fact, we will assume, for the sake of argument, that "Lake Augusta" is, indeed, a "water impoundment" within the meaning

of former Pennsylvania Code section 99.1(b). Nonetheless, close examination of former section 99.1(b) reveals that such a label is insignificant in this case.

Former section 99.1(b) of the Pennsylvania Code purports to impose restrictions on motorboat travel within "special areas," defined in the section as "water impoundments—dams, reservoirs, lakes, and the like...." 58 Pa.Code § 99.1(b). In actuality, however, former section 99.1(b) constitutes nothing more than a mere guideline, providing that "[m]otorboats under way on water impoundments ... *may* operate in a counterclockwise fashion *insofar as reasonably possible.*" 58 Pa.Code § 99.1(b) (emphasis added). Thus, former section 99.1(b) is not a mandatory standard, violation of which would be punishable by fine or other penalty, but is, rather, simply a suggested method of travel to be followed in the motorboat operator's exercise of reasonable discretion.[9]

In light of our foregoing discussion, we must next decide whether, as the Commonwealth argues, the PFBC officers had reasonable and articulable suspicion to stop and detain Defendant. According to the Commonwealth, the PFBC officers had at least two "reasonable and articulable" grounds to stop Defendant for suspected summary boating violations: (1) the officers' firsthand observation of Defendant operating his motorboat in a clockwise fashion, in violation of the rules of the road for impoundments; and (2) the officers' inability to see a valid registra-

---

6. Act of November 26, 1978, P.L. 1375, *as amended*, 32 P.S. §§ 693.1–693.7. Section 3 defines a "Body of Water" as "[a]ny natural or artificial lake, pond, reservoir, swamp, marsh or wetland." 32 P.S. § 693.3.

7. Section 3 defines a "dam" as "[a]ny artificial barrier, together with its appurtenant works, constructed for the purpose of impounding or storing water or any other fluid or semifluid; or any refuse bank fill or structure for highway, railroad or other purposes which does or may impound water or any other fluid or semifluid." 32 P.S. § 693.3.

8. The refusal of a court to reconsider, rehear or permit reargument of a final decree is not reviewable on appeal. *In re Estate of Merrick*, 432 Pa. 450, 247 A.2d 786 (1968). To the extent, therefore, that the Commonwealth seeks to challenge/appeal the trial court's order of June 1,

1994 denying the Commonwealth's Motion for Reconsideration, the appeal must be dismissed as unreviewable.

9. As noted in footnote two, *supra*, former section 99.1(b) was amended shortly after the trial court's decision to eliminate its discretionary language and, in its place, insert language now *mandating* that all motorboats under way on water impoundments be operated in a counterclockwise fashion.

Under the current section, section 103.3(a), therefore, a motorboat operator may only deviate from a counterclockwise direction of operation when it is not "reasonably possible" to continue on that course. 58 Pa.Code § 103.3(a). In such case, an operator charged with a violation of the regulation will be able to raise the defense that, due to extenuating circumstances, it was not reasonably possible to operate in a counterclockwise fashion.

tion sticker, as required by law, on Defendant's motorboat. These grounds, according to the Commonwealth, would have been reasonable for investigatory purposes even if formal charges had not arisen out of the stop and were sufficient to produce probable cause to arrest Defendant for boating under the influence.

■ As the Commonwealth correctly notes, a police officer may stop a vehicle for the purposes of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or the driver's license "[w]henever [he or she] ... has articulable and reasonable grounds to suspect a violation of [the Vehicle Code]...." 75 Pa.C.S. § 6308(b); *Commonwealth v. McElroy,* 428 Pa.Superior Ct. 69, 630 A.2d 35 (1993). We agree with the Commonwealth that analogous principles apply to violations of the Fish and Boat Code; however, we find little merit in the Commonwealth's first contention that, in essence, the PFBC officers had "reasonable and articulable" grounds to stop and detain Defendant because they believed that Defendant was violating former section 99.1(b) of the Pennsylvania Code.

■ In ascertaining whether reasonable suspicion exists, a reviewing court must examine the totality of the circumstances to discern whether the officer has a particularized and objective basis for suspecting the individual stopped of criminal activity.[10] *Commonwealth v. Johnson,* 444 Pa.Superior Ct. 289, 663 A.2d 787 (1995). If the officer is found to have such a basis, he or she may make an investigatory stop where he or she reasonably believes that criminal activity may be afoot, *Commonwealth v. Valenzuela,* 408 Pa.Superior Ct. 399, 597 A.2d 93 (1991), even if that belief later turns out to have been mistaken or the defendant is not ultimately convicted of the suspected crime. *See, e.g., McElroy.*

There is a crucial distinction that must be recognized, however, between a mistake of fact and a mistake of law. For example, where an officer stops a vehicle because it matches the description of a car recently reported stolen, but later discovers that it is not, in fact, stolen, he or she has made a mistake of fact which, if reasonable, is sufficient to support a finding of "articulable and reasonable" suspicion to make a warrantless stop. Where, on the other hand, an officer stops a vehicle going 55 miles per hour for speeding when the speed limit is actually 65 miles per hour in that area, he or she has made a mistake of law which, reasonable or otherwise, is insufficient to supply the "articulable and reasonable" suspicion required to make a warrantless stop. *See Commonwealth v. Henderson,* 444 Pa.Superior Ct. 170, 663 A.2d 728 (1995) (holding that violation of seat belt provisions of Vehicle Code can never result in conviction, absent simultaneous conviction of another section of Vehicle Code, and thus, can never serve as articulable and reasonable grounds to stop motor vehicle because Vehicle Code has not been violated under such circumstances). In the former instance, there might have been a violation, had the proper factual situation presented itself, whereas, in the latter case, there could be no violation no matter what factual scenario arose because there was no law prohibiting the allegedly violative act.

■ With this in mind, we turn to the facts of the present case. Here, the PFBC officers stopped Defendant for operating his motorboat in a clockwise fashion, in violation of former section 99.1(b) of the Code. As noted earlier, however, former section 99.1(b) is purely discretionary, merely suggesting a fashion of travel that a motorboat operator *may* follow; therefore, the regulation, by its very nature, cannot be violated. Consequently, the PFBC officers clearly made a mistake of law which, even if reasonable, does not justify a finding of "articulable and

---

**10.** The detaining officer must have more than a hunch as the basis for his stop. "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White,* 496 U.S. 325, 329, 110 S.Ct. 2412, 2415,

*110 L.Ed.2d 301 (1990). Thus, both the quantity and quality of the information is considered when evaluating whether the totality of the circumstances indicates reasonable suspicion to make an investigatory stop. Id.*

reasonable" suspicion to stop and detain Defendant.

▮ The Commonwealth contends, however, that the PFBC officers had a second reasonable and articulable ground for stopping and detaining Defendant, the PFBC officers' inability, or failure, to see a valid registration sticker on Defendant's boat. Again, the issue is whether articulable and reasonable grounds to stop and detain a motorboat operator and his passengers will lie where the alleged grounds for the detention are subsequently found to be invalid. Unlike the Commonwealth's previous contention, however, the PFBC officers' failure to notice the valid registration sticker on Defendant's boat presents an example of a mistake of fact; the issue, thus, becomes whether or not that mistake was reasonable. We believe that it was not.

It is undisputed that there was, in fact, a valid registration sticker on Defendant's boat when he was stopped on September 5, 1993. According to the Commonwealth's testimony at the habeas corpus hearings, however, the PFBC officers were unable to observe the registration sticker on Defendant's boat because Defendant failed to comply with Pennsylvania Code section 93.5, 58 Pa.Code § 93.5, which requires registration numbers and validation decals to be maintained "so they are clearly visible and legible." (Habeas corpus hearing of April 5, 1994, N.T. at 8.) Specifically, the Commonwealth asserted that the officers could not see the green sticker because it was placed upon a green portion of the boat and that,[11] therefore, they had reasonable and articulable suspicion to stop Defendant for violation of section 5301 of the Fish and Boat Code, 30 Pa.C.S. § 5301, which requires all boats operating within the Commonwealth to be registered with the PFBC.

The trial court essentially found, and we agree, that the PFBC officers' alleged failure to see the registration sticker was unreasonable under the circumstances. At the May 3, 1994 habeas corpus hearing, Defendant introduced properly authenticated photographs which clearly showed that the green registration sticker was properly displayed on the white portion of the boat and was, in fact, nowhere near the green portion. (Defense Exh. No. 1.) Under such circumstances, the PFBC officers can hardly be said to have had "a particularized and objective basis" for suspecting Defendant of a violation of the Pennsylvania Code.[12] *Johnson* at 294, 663 A.2d at 789. Consequently, we find that the PFBC officers failed to establish the "articulable and reasonable" suspicion necessary to justify an investigative stop.[13]

Accordingly, we affirm the trial court's order granting Defendant's Petition for a Writ of Habeas Corpus and dismissing all charges against him.

## ORDER

AND NOW, this 19th day of January, 1996, the order of the Court of Common Pleas of Northumberland County, dated May 13, 1994, is affirmed.

---

11. We note, however, as did the trial court in its opinion, that one of the PFBC officers, Scott Hornberger, has difficulty differentiating closely matched colors.

12. As Justice Nix noted in *Commonwealth v. Murray*, 460 Pa. 53, 61, 331 A.2d 414, 418 (1975), "it is ... clear that an investigative stop of a moving vehicle to be valid must be based upon objective facts creating a reasonable suspicion that the detained motorist is presently involved in criminal activity."

13. A seizure of the person effectuated without probable cause or, in this case, articulable and reasonable suspicion, renders all evidence obtained as a result of the illegal seizure inadmissible at trial. U.S. Const. Amend. IV; *Commonwealth v. Elliott*, 376 Pa.Superior Ct. 536, 546 A.2d 654, *appeal denied*, 521 Pa. 617, 557 A.2d 721 (1989). Thus, any evidence of alcohol consumption obtained by the PFBC officers as a result of their unlawful stop is inadmissible as "fruits of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).