**Commonwealth v. Kaufman**

C.P. of Berks County, No. CP-06-CR-1985-2013

*Justin Bodor*, for Commonwealth.
*Kathryn Hinner*, for defendant.

BOCCABELLA, *J.*, October 18, 2013—

## FINDINGS OF FACT

1. On December 9th, 2012, at approximately 6:45 p.m., Chief William J. McEllroy III and Officer Peter J. Witman were dispatched to 220 Maple Drive, Tilden Township, Berks County for a possible domestic in progress involving Michael Dennis Kaufman Sr. (defendant) and his 21-year-old daughter.

2. The defendant's daughter called her mother who was not at the location of the dispute. The mother called the police to report the dispute and was heading home where her daughter was located.

3. Chief McEllroy and Officer Witman were advised by Berks County Communications that it was unknown if the domestic dispute was physical. All that the officers were told was that the dispute involved the defendant attempting to kick his daughter out of the residence.

4. When the officers arrived, they parked their patrol vehicles on the corner of Maple Drive. As they began to walk toward the residence, Chief McEllroy noticed a white mini-van leaving the rear of 220 Maple Drive. Chief McEllroy did not see who was driving the vehicle. Not knowing if there had been any domestic violence, the officers, nevertheless, decided to return to their patrol vehicles and stop the white van.

5. Chief McEllroy stopped the vehicle on Diamond Drive. He approached the vehicle and asked the defendant (Michael Kaufman) to shut off his vehicle. The defendant complied. Chief McEllroy explained to the defendant that he stopped him because he was dispatched to domestic dispute at his residence. The defendant responded "I was just trying to leave the argument and go to my mother's house."

6. Chief McEllroy asked the defendant to step out of the vehicle to speak to him. The defendant complied. During the conversation, Chief McEllroy noticed a strong odor of an alcoholic beverage coming from his person.

7. Chief McEllroy asked Officer Witman to perform the Standardized Field Sobriety Tests on the defendant. The defendant failed the tests. Chief McEllroy made the decision to place the defendant under arrest for DUI.

8. Officer Witman was then asked to retrieve the keys and lock the vehicle. When he sat in the vehicle to reach for the keys, he observed a plastic liquor bottle of the floor

directly next to the driver's seat. Officer Witman picked up the bottle and saw that it was approximately half-full of whiskey. The bottle was 1.75 liters of Canadian Hunter whiskey.

9. Chief McEllroy took the defendant to St. Joseph's Medical Center and read the chemical testing warnings. The defendant refused the blood draw and did not sign anything. The defendant demanded to speak to his attorney.

10. Chief McEllroy completed the form indicating the refusal of the chemical testing and transported the defendant to his mother's residence and released him to the custody of his wife.

11. Bill of Information was filed which charged Michael Kaufman Sr. with Driving Under the Influence of Alcohol, in violation of 75 Pa.C.S.A. §3802(a)(1) and 75 Pa.C.S.A §3809(a), Restriction on Alcoholic Beverages.

## CONCLUSIONS OF LAW

1. "Where a defendant files a motion to suppress, the burdens of production and persuasion are on the Commonwealth to prove the challenged evidence was not obtained in violation of the defendant's rights." *Commonwealth v. West*, 834 A.2d 625 at 629 (Pa. Super. 2003), citing *Commonwealth v. Wilmington*, 729 A.2d 1160 (Pa. Super. 1999); *See also* Pa.R.Crim.P. 581(H).

2. The Constitution of the Commonwealth of Pennsylvania provides:

The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or seize any person or things shall issue without describing

them as nearly as may be, nor without probable case, supported by oath or affirmation subscribed to by the affiant.

Pa. CONST. art. I, §8.

Section 6308(b) of the Vehicle Code provides:

Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has *reasonable suspicion* that a violation of this title is occurring or has occurred, he may stop a vehicle upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S.A. §6308(b) (Emphasis added).

3. "Thus, when an officer has reasonable suspicion a violation of the Vehicle Code is occurring or has occurred, he may interrupt the privileged operation of a vehicle on the public highways and stop the vehicle for the investigative purposes stated therein." *Commonwealth v. Chase*, 960 A.2d 108, 112 (Pa. 2008) citing 75 Pa. C.S.A. §6308(b).

4. "To establish grounds for 'reasonable suspicion'... the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." *Commonwealth v. Little*, 903 A.2d 1269, 1272 (Pa. Super. 2006) citing *Commonwealth v. Bennet*, 827 A.2d 469, 477 (Pa. Super. 2003) (citing *Commonwealth v. Cook*, 558

142

Pa.50, 735 A.2d 673, 676 (1999)).

5. "In order to determine whether the police had a reasonable suspicion, the totality of the circumstances-the whole picture-must be considered." *In the Interest of D.M.*, 781 A.2d 1161, 1163 (Pa.2001) citing *United States v. Cortez*, 449 U.S. 411, 417 (1981).

6. In making this determination, we must give "due weight...to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience." *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa.1999) quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968).

7. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, "[e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Commonwealth v. Cook*, 735 A.2d 673, 676 (Pa.1999) quoting *Terry v. Ohio*, 392 U.S. 1, 22 (1968).

8. "Reasonable suspicion sufficient to stop a motorist must be viewed from the standpoint of an objectively reasonable police officer." *Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008) citing *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

9. "While it is argued the lesser standard [reasonable suspicion] will allow a vehicle stop to be made based on pretextual motives, the United States Supreme Court made clear that case law 'foreclose[s] any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved.'" *Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008) citing *Whren v. United States*, 517 U.S. 806, 813 (1996); *See also Commonwealth v. Foglia*, 979 A.2d

357, 361-62 (Pa. Super. 2009) (Stating that observations made after the officer intends to stop the defendant can be used to support their actions).

10. "Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, 'it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.' Gleason*, 785 A.2d at 989 (citation omitted). *See also Chase*, 960 A.2d at 116 (reaffirming Gleason's probable cause standard for non-investigative detentions of suspected Vehicle Code violations)." *Commonwealth v. Feczko*, --- A.3d ----, 2010 WL 5178034, filed May December 22, 2010 (*en banc*) (Emphasis in original) quoting *Commonwealth v. Gleason*, 785 A.2d 983, 989 (Pa. 2001) and citing *Commonwealth v. Chase*, 960 A.2d 120, 116 (Pa. 2008); *But see Commonwealth v. Muhammed*, 992 A.2d 889 (Pa. Super. 2010) and *Commonwealth v. Perry*, 982 A.2d 1009 (Pa. Super. 2009).

11. "We evaluate probable cause by considering all relevant facts under a totality of circumstances analysis." *Commonwealth v. Hernandez*, 935 A.2d 1275, 1284 (Pa. 2007) citing *Commonwealth v. Luv*, 735 A.2d 87, 90 (Pa. 1999) (citing *Commonwealth v. Gray*, 503 A.2d 921 (Pa. 1985)).

12. "[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Cook*, 865 A.2d 869, 875 (Pa. Super. 2004) quoting *Commonwealth v. Lindblom*, 854 A.2d 604,

607 (Pa. Super. 2004).

13. "[I]t is the sole province of the suppression court to weigh the credibility of the witnesses. Further, the suppression court judge is entitled to believe all, part or none of the evidence presented." *Commonwealth v. Santiago*, 980 A.2d 659, 664 (Pa. Super. 2009); *See* also *Commonwealth v. Costa-Hernandez*, 802 A.2d 671, 675 (Pa. Super. 2002); *See also Commonwealth v. Quiles*, 619 A.2d 291, 292 (Pa. Super. 1993) citing *Commonwealth v. Smith*, 577 A.2d 1387, 1388 (Pa. Super. 1990).

14. In this case, Chief McEllory and Officer Witman were dispatched to 220 Maple Drive, Tilden Township, Berks County for a possible domestic in progress involving Michael Dennis Kaufman Sr. (defendant) and his 21-year-old daughter. Chief McEllory testified that the Berks County Communications reported that it was "unknown" if the domestic dispute was physical. All the officers knew is that the dispute involved the defendant attempting to kick his daughter out of the residence.

When the officers arrived, they parked there patrol vehicles on the corner of Maple Drive. As they began to walk towards the residence, Chief McEllroy noticed a white mini-van leaving the rear of 220 Maple Drive. Chief McEllroy testified that he did "not" see who was driving the vehicle. Not knowing if there had been any domestic violence, the officers decided to return to their patrol vehicles to stop the white van. Chief McEllroy stopped the vehicle on Diamond Drive. He approached the vehicle and asked the defendant (Michael Kaufman) to shut off his vehicle. The defendant complied. Chief McEllroy testified that the basis of his traffic stop was to explain to the defendant, that he stopped him because he was dispatched to domestic dispute at his residence.

The defendant responded "I was just trying to leave the argument and go to my mother's house"

Chief McEllroy asked the defendant to step out of the vehicle to speak to him. The defendant complied. During the conversation, Chief McEllroy noticed a strong odor of an alcoholic beverage coming from his person. Chief McEllroy asked Officer Witman to perform the Standardized Field Sobriety Tests on the defendant. The defendant failed the HGN, Walk & Turn, and the One Leg Stand. Chief McEllroy made the decision to place the defendant under arrest for DUI.

Chief McEllroy and Officer Witman testified that at no time during this event did he see the defendant enter the white van and drive away from the residence. The officers only saw the white van leaving the residence. They assumed that the defendant was driving this vehicle and decided to stop this vehicle. At the time of the stop, the officers did not testify that the defendant made any vehicle violations. Furthermore, the officers did not even know what occurred at the residence to stop the defendant. "To establish grounds for 'reasonable suspicion'...the officer must articulate specific observations which, in conjunction with reasonable inferences derived from these observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and the person he stopped was involved in that activity." *Commonwealth v. Little*, 903 A.2d 1269.

When Chief McEllroy stopped the defendant, he did not have articulate specific observations. He did not see the defendant speed away from the residence. He did not even see the defendant enter the vehicle. Also the officers did not have reasonable inferences that criminal activity was afoot. Dispatch did not see or report a white

van leaving the residence. All the officers knew was that there was a unknown domestic dispute in the residence. Stopping a vehicle for a unknown dispute in a residence is not warranted for a traffic stop. Furthermore, the officers never reported or testified that they went to the residence to investigate the original dispatch of the unknown domestic dispute.

The court holds the evidence presented is not sufficient to establish reasonable suspicion to support a lawful stop. Based on the totality of the circumstances, the court finds that the Commonwealth has not met its burden in establishing reasonable suspicion for the vehicle stop. The court finds that the asserted ground for initiating the stop was merely pretextual and not the result of an observation of a violation of the Motor Vehicle Code. Based on all of the foregoing, this court holds that the vehicle stop occurred in violation of the defendant's constitutional rights. Accordingly, any evidence derived from the stop is inadmissible as fruit of the poisonous tree.

15. The Defendant's Motion for Suppression of the Evidence is granted.

16. "In evaluating an accused's entitlement to pre-trial habeas corpus relief, a trial court must determine whether there is sufficient evidence to make out a prima facie case that the defendant committed the crime with which he or she is charged." *Commonwealth v. Hock,* 728 A.2d 943, 945 (Pa. 1999); *See generally Commonwealth v. Rachau,* 670 A.2d 731, 733 n.5 (Pa. Commw. 1996) citing *Commonwealth v. Kowalek,* 647 A.2d 948, 949 (Pa. Super. 1994).

17. "A *prima facie* case of defendant's guilt exists, so as to satisfy Commonwealth's burden at pre-trial stage of

criminal prosecution, when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense." *Commonwealth v. Huggins*, 836 A.2d 862, 866 (Pa. 2003) citing *Commonwealth v. McBride*, 595 A.2d 589, 591 (Pa. 1991) (citing *Commonwealth v. Wojdak*, 466 A.2d 991 (Pa. 1983)).

18. "The evidence need only be such that, if presented at trial and accepted as true, the judge would be warranted in permitting the case to go to the jury." *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2001).

19. "In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Commonwealth v. Schmohl*, 975 A.2d 1144, 1147 (Pa. Super. 2009).

20. "[I]nferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case." *Commonwealth v. Marti*, 779 A.2d 1177, 1180 (Pa. Super. 2001) quoting *Commonwealth v. Owen*, 580 A.2d 412, 414 (Pa. Super. 1990).

21. In this case, having already determined that the vehicle stop is illegal, the court finds that the Commonwealth has presented insufficient evidence to establish a *prima facie* case with respect to all counts.

22. The defendant's petition for writ of habeas corpus is granted.

## ORDER

And now, this 18th day of October 2013, it is hereby

148

ordered that the defendant's motion to suppress evidence is granted. It is further ordered that the defendant's petition for writ of habeas corpus is granted with respect to all counts.