J-S23011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARK STOKES | : | |
| | : | |
| Appellant | : | No. 2123 EDA 2020 |

Appeal from the Judgment of Sentence[1] Entered September 2, 2020
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0004645-2019

BEFORE:   LAZARUS, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED OCTOBER 8, 2021**

Mark Stokes appeals from the judgment of sentence, entered in the Court of Common Pleas of Delaware County, following his conviction for driving under the influence (DUI)—general impairment/incapable of safe driving, a second offense.[2]  Upon careful review, we find that Stokes' arresting

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although Stokes filed his notice of appeal from the October 8, 2020 order denying post-verdict motions, we have amended the caption to reflect that the appeal is technically taken from the judgment of sentence. ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (en banc) (stating appeal in criminal matter properly lies from judgment of sentence imposed, not date post-sentence motions decided); ***see also Commonwealth v. Chamberlain***, 658 A.2d 395, 397 (Pa. Super. 1995) (order denying post-sentence motion acts to finalize judgment of sentence; thus, appeal is taken from judgment of sentence, not order denying post-sentence motion).

[2] 75 Pa.C.S. § 3802(a)(1).

officer's mistaken belief was unreasonable and, thus, did not supply the probable cause necessary to stop Stokes' vehicle. Thus, we vacate and remand.

On the evening of April 6, 2019, Officer Allen Reeves was on patrol driving Southbound on PA-452, a four-lane highway, when he passed Stokes' vehicle, a white Cadillac, travelling in the opposite direction. N.T. Suppression Hearing 11/26/19, at 12, 15-16, 26. Officer Reeves heard "a loud roar from the engine" of Stokes' vehicle, *id.* at 23, and noticed that it also had tinted windows. *Id.* at 14. Officer Reeves believed he saw Stokes' vehicle travel straight through an intersection, at a traffic light, while in a left-turn-only lane. *Id.* at 30. Officer Reeves allegedly observed Stokes approximately one-half to three quarters of a mile away, from his side-view mirror, travel through the intersection. *Id.* at 26, 30. Officer Reeves testified that he could see the oncoming Northbound lanes of travel where Stokes' vehicle was positioned, but not the entire intersection. *Id.* Officer Reeves also testified that he did not recall what color the traffic light was when Stokes' vehicle went through the intersection. *Id.* at 22.

A traffic surveillance video and two screen-shots from the video, offered by the defense at trial, showed that Stokes' vehicle was not, in fact, in a left-turn-only lane when he proceeded through the intersection. *Id.* at 25. Officer Reeves conceded this mistake on cross-examination after the defense played

the video. *Id.* at 25.[3]  Officer Reeves testified that the right-lane, which Stokes was seen driving in at the beginning of the video, merges into the left-lane 100 yards beyond the intersection.  The officer also testified that Stokes'

---

[3] The following exchange took place on cross-examination:

Defense Counsel:  According to what you saw in this video, did [Stokes] commit the offense that you are telling us about today?

Officer Reeves:  N[o] he did not.

Defense Counsel:  Okay.

Officer Reeves:  The traffic camera shows him traveling straight in the straight lane.

Defense Counsel:  Okay.  And you would agree that he didn't commit a violation?

Officer Reeves:  From what I believed, he – from looking at the traffic camera, there was no violation.

Defense Counsel:  Okay.  But I think you were going to tell us from what you believed, meaning what you saw in your rearview mirror, that's when you –

Officer Reeves:  Correct, I believed, by looking in my rearview mirror, I firmly believed that he committed traffic offense.

*       *       *

Defense Counsel:  We now know, in fact, that he didn't commit that?

Officer Reeves:  Correct.

*Id.* at 25-26.

driving was consistent with someone merging properly from the right-lane into the left-lane. *Id.* at 30.

After Officer Reeves made a U-turn to conduct a traffic stop of Stokes' vehicle, Stokes made a left turn from I-95 onto Booker Avenue, turned into a driveway, and parked his Cadillac. *Id.* at 25. At that point, Officer Reeves activated his emergency lights and siren, parked and exited his patrol car, and approached Stokes' parked vehicle. *Id.* at 17. Officer Reeves testified that about sixty seconds elapsed between when he observed Stokes entering the intersection and when he conducted the traffic stop. Officer Reeves also testified that he lost sight of Stokes' vehicle for about forty of the sixty seconds needed to turn his cruiser around and follow Stokes to conduct the stop. *Id.* at 20.[4]

Stokes filed a pre-trial motion *in limine*, claiming that Officer Reeves lacked probable cause to conduct the warrantless traffic stop and, therefore, Stokes' arrest was unlawful and all evidence obtained as a result of the stop should be suppressed. Omnibus Pre-Trial Motion, 9/6/19, at 2. On November 26, 2019, the trial court held a suppression hearing, at which Officer Reeves testified. Following the hearing, the trial court denied Stokes' motion, entering detailed findings of fact and conclusions of law to support its decision. *See*

---

[4] Officer Reeves testified that he inspected Stokes' Cadillac more closely after it was pulled over and noticed that the license plate cover was illegally tinted. *Id.* at 18-19. However, Officer Reeves further testified that the sole reason he initiated the traffic stop was because Stokes appeared to travel straight through the intersection in a left-turn-only lane. *Id.* at 21-22.

Order Denying Defendant's Motion to Suppress, 1/8/20, at 1-4. The suppression judge noted that she "found Officer Reeves' testimony to be a credible account of the traffic stop," *id.* at 2, and concluded after examining a totality of the circumstances that, "based on [Officer Reeves'] observations[,] even if they were later proven to be mistaken[,] . . . Officer Reeves' belief that [Stokes] violated the [] Vehicle Code was objectively reasonable [and, thus, he] . . . had probable cause to stop [Stokes'] vehicle."[5] *Id.* at 6. On February 3, 2020, Stokes filed a motion for reconsideration of the order denying his suppression motion. The court denied the reconsideration motion the following day, on February 4, 2020.

---

[5] To support its conclusion that the stop was lawful and based upon probable cause, the trial court relies on *Heien v. North Carolina*, 574 U.S. 54, 62 (2014). In *Heien*, the United States Supreme Court held that officers may rely on reasonable mistakes of law to establish probable cause without violating the Fourth Amendment. However, the trial court interpreted *Heien* to also support the conclusion that reasonable mistakes of fact can support probable cause under the Fourth Amendment. However, the *Heien* Court only stated this principle in *dicta*. Moreover, unlike *Heien*, which involved the Fourth Amendment of the United States Constitution, this matter implicates the more protective Pennsylvania Constitution, Article 1, Section 8, as discussed below. *See* Trial Court Opinion, 12/7/2020, at 5-6; Pa. Const. Art. 1 § 8; *Heien*, 574 U.S. at 62; *see also Commonwealth v. Edmunds*, 586 A.2d 887, 898-99 (Pa. 1991) (holding that Pennsylvania's Constitution extends further protection than Fourth Amendment because it also serves privacy concerns and bolsters warrants). While the trial court is correct that reasonable mistakes of fact can support a finding of probable cause, *Heien* is not dispositive of the issue on appeal. 574 U.S. at 62; *see Commonwealth v. Chase*, 960 A.2d 108, 120 (Pa. 2008).

Officer Reeves charged Stokes with the above-mentioned offense, DUI-general impairment,[6] and the summary offense of obedience to traffic control devices, 75 Pa.C.S. § 3111(a). After a one-day bench trial, held on July 1, 2020, the trial court found Stokes guilty of DUI and not guilty of violating section 3111(a). **See** Verdict, 7/6/20. On September 2, 2020, the trial court sentenced Stokes to five days to six months' imprisonment. Stokes filed timely post-verdict motions on September 14, 2020, which the trial court denied on October 8, 2020. Stokes filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Stokes presents the following issue for our review: "Whether the trial court erred when it denied a motion to suppress evidence obtained as a result of a vehicle stop and subsequent arrest of a motorist when the stop was unreasonable based on the totality of the circumstances[.]" Appellant's Brief, at 4.

When reviewing an order denying a motion to suppress evidence, we must determine whether the trial court's factual findings are supported by the evidence of record. **Commonwealth v. Blair**, 860 A.2d 567, 571 (Pa. Super. 2004). If the evidence supports the trial court's findings, we are bound by

---

[6] During the stop, Officer Reeves observed that Stokes showed signs of intoxication and viewed Corona beer bottles in Stokes' vehicle. Officer Chad Osborne arrived to assist Officer Reeves in his traffic stop and administered two field sobriety tests to Stokes, which Stokes failed. N.T. Non-Jury Trial, 7/1/20, at 34, 30, 37. Officer Osbourne then asked Stokes to sign a DL-26 for a blood test, which he refused. **Id.** at 42.

them and may reverse only if the legal conclusions drawn therefrom are erroneous. *Id.* "[W]here a motion to suppress has been filed, the burden is on the Commonwealth to establish by a preponderance of the evidence that the challenged evidence is admissible." *Commonwealth v. Powell*, 994 A.2d 1096, 1101 (Pa. Super. 2010). Our factual review is limited to the suppression court's record, but we review the suppression court's conclusions of law <u>de novo</u>. *Commonwealth v. Snyder*, 963 A.2d 396, 400 (Pa. 2009).

Stokes claims that the trial court improperly denied his suppression motion where, based on a totality of the circumstances, Officer Reeves' vehicle stop was unreasonable. Specifically, Stokes contends that "[O]fficer [Reeves] could not have reasonably believed, based on all of the surrounding circumstances, that a motor vehicle violation occurred, and, thus[,] the Commonwealth failed to present sufficient independent, articulable facts upon which the court could determine that the vehicle stop was permissible." Appellant's Brief, at 9. We agree.

Instantly, Officer Reeves stopped Stokes' vehicle after he allegedly witnessed him travel through an intersection in a left-turn-only lane. The Pennsylvania Vehicle Code requires that drivers obey the instruction of any applicable official traffic-control device, such as a left-turn-only lane. *See* 75 Pa.C.S. § 3111. Moreover, "a police officer may stop a motor vehicle if he or she reasonably believes that a provision of the [] Vehicle Code is being or has been violated." *Commonwealth v. Dewitt*, 608 A.2d 1030, 1032 (Pa. 1992).

- 7 -

Probable cause, rather than reasonable suspicion, is required to justify a vehicle stop for a suspected Vehicle Code violation when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. **See** 75 Pa.C.S. § 6308(b) (investigation by police officers); **see also Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (en banc) (holding vehicle stop could not serve investigative purpose relevant to driver suspected of using multiple lanes); **Commonwealth v. Freeman**, 150 A.3d 32, 34-35 (Pa. Super. 2016) (holding vehicle stop following suspected violation of driving too closely could not serve investigative purpose and, therefore, required probable cause). Thus, Officer Reeves was required to have probable cause in order to stop Stokes' vehicle, where he suspected that Stokes violated section 3111 and no further investigation was necessary to clarify whether the violation occurred. **Feczko**, 10 A.3d at 1291; **Freeman**, 150 A.3d at 34-35.

In order to prove probable cause, the Commonwealth must demonstrate that "facts and circumstances within the police officer's knowledge and of which the officer has reasonably trustworthy information" are sufficient "to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested . . . determined by the totality of the circumstances." **Commonwealth v. Anthony**, 1 A.3d 914, 996-97 (Pa. Super. 2010) (internal citations and quotation marks omitted). For the reasons that follow, we conclude that Officer Reeves lacked the probable cause necessary to effectuate a constitutional stop of Stokes' vehicle.

Pennsylvania allows for reasonable mistakes of fact to constitute probable cause, but the Commonwealth must demonstrate that the mistake was reasonable given the circumstances. **See Chase**, **supra** at 120; **see also Commonwealth v. Rachau**, 670 A.2d 731, 735 (Pa. Cmwlth. Ct. 1996) (finding officers were unreasonably mistaken when they believed boat lacked registration even though it had visible, green registration sticker on white paint). Whether a mistake is reasonable is typically examined by whether there are specific factors beyond the mistake itself that could lead a reasonable officer to make the mistake in question. **See Chase**, **supra** at 120; **see also Rachau, supra**, at 735; **Commonwealth v. Mitchell**, 2020 Pa. Super. Unpub. LEXIS 317 at *2, 9 (Pa. Super. 2020) (unpublished memorandum decision) (finding officer established probable cause when he reasonably mistook passenger of vehicle as driver after he saw passenger in driver's seat earlier when car was parked).[7]

In **Commonwealth v. Pinney**, 378 A.2d 293, 295-96 (Pa. 1977), our Supreme Court held that an officer was unreasonable in mistaking a defendant, who was part of a larger group of three, for either one of two suspects. Those suspects, like the defendant, were also white, young, long-haired, and found within 70 miles of where the crime occurred. In that case, the police officers were told that one of the suspects had long, shaggy, black

---

[7] **See** Pa. Super. Ct. O.P. 65.37(C) ("Non-precedential decisions filed after May 1, 2019, may be cited for their persuasive value, pursuant to Pa.R.A.P. 126(b).").

hair. *Id.* at 295. The defendant's hair, however, was light brown. *Id.* Moreover, the defendant was four inches shorter, thirty pounds lighter, and lacked the facial markings of the second suspect. *Id.* The Pennsylvania Supreme Court noted in its decision that "good faith is not enough" and there was a lack of specific factual support to even uphold reasonable suspicion for a *Terry*[8] frisk given the dissimilarities among the suspects and the defendant, including that the defendant had a different name, he did not act suspiciously, and his physical appearance was different. *Id.* at 296.

Here, the trial court and prosecution fail to cite specific facts, other than the mistake itself, to support the inference that Stokes went straight in a left-turn-only lane or that Officer Reeves' mistake was reasonable. *Cf. Mitchell*, *supra*. In fact, Officer Reeves' own testimony supports the conclusion that his belief was *not* reasonable. Specifically, Officer Reeves testified that: (1) the traffic stop took place in the dark at 10:30 p.m.; (2) he lost sight of Stokes' vehicle for approximately forty of the sixty seconds it took to catch up with him to effectuate the stop; (3) he was one-half to three-quarters of a mile away from Stokes when he believed he saw him go straight in the left-turn-only lane; (4) he observed Stokes travel through the intersection in his side-view mirror; and (5) both he and Stokes were driving in opposite directions when Officer Reeves made his mistaken observation. N.T. Suppression Hearing, 11/26/19, at 17-25. All of these factors, taken together, do not

---

[8] *Terry v. Ohio,* 392 U.S. 1 (1968).

suggest that the facts and circumstances within Officer Reeves' knowledge were sufficient "to warrant a person of reasonable caution [to] belie[ve]" that Stokes went straight through the intersection in the left-turn-only lane. **Anthony**, **supra** at 996-97. Thus, we find the Commonwealth failed to demonstrate that Officer Reeves' mistake was reasonable and, accordingly, conclude that Officer Reeves lacked probable cause to initiate the vehicle stop. **See Chase**, **supra**; **Feczko**, **supra**; **see also** 75 Pa.C.S. § 6308(b). Because the trial court's legal conclusions are not supported by the record, the court erred in denying Stokes' pre-trial suppression motion. **Blair**, **supra**.[9]

Judgment of sentence vacated. Suppression order reversed. Case remanded for further proceedings.[10] Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/8/2021

---

[9] Our decision today does not ignore the well-established precept that "[i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." **Commonwealth v. Gallagher**, 896 A.2d 583, 585 (Pa. Super. 2006). However, even acknowledging the fact that the trial court found Officer Reeves' account to be credible, **supra** at 5, his mistake was not reasonable.

[10] In light of our disposition, we vacate Stokes' judgment of sentence and remand for a new trial at which the evidence derived from Stokes' unconstitutional stop shall be suppressed.

- 11 -