J-S53028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                   :           PENNSYLVANIA
                                   :
            v.                    :
                                   :
                                   :
MICHAEL TOWNS,             :
                                   :
            Appellant     :   No. 78 EDA 2018

Appeal from the Judgment of Sentence December 29, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0010313-2016

BEFORE:   GANTMAN, P.J., OTT, J., and PLATT[*], J.

MEMORANDUM BY OTT, J.:               **FILED SEPTEMBER 24, 2018**

Michael Towns appeals from the judgment of sentence of one year and six months to three years of confinement followed by four years of probation, which was imposed after he was convicted by the trial court of aggravated assault, simple assault, and resisting arrest.[1]  We affirm.

The facts from the testimony at the non-jury trial were that on September 17, 2016, at 4:25 a.m., Officers Hunter Freeman and Arsinio Perez were in a marked patrol car on the Belmont Plateau in Fairmount Park in Philadelphia when they saw Towns' automobile parked in a lot far away from any other vehicles.  N.T., 11/13/2017, at 8, 11-12.  The officers exited their

_____

Retired Senior Judge assigned to the Superior Court.

[1]  18 Pa.C.S. §§ 2702(a)(3), 2701(a), and 5104, respectively.

vehicle and approached the front doors of Towns' vehicle, when they saw that the two occupants appeared to be unconscious. Officer Freeman tapped on the window, and the parties awoke. The officers asked the occupants for identification, which they provided. Officer Freeman was standing about one foot away from the driver's side of the automobile, and Officer Perez was standing on the passenger's side. Towns then started the engine, sped out of the parking lot in reverse, and became stuck on an incline. *Id.* at 12. The officers advanced toward the vehicle with their firearms drawn. Towns exited the vehicle and ran. Officer Freeman holstered his gun before chasing Towns. *Id.* at 12-14, 25-26. Officer Freeman grabbed Towns' shirt, but Towns twisted around, shoved the officer, and escaped. *Id.* at 13-14, 21. As Officer Freeman walked back to the parking lot, he noticed that his right hand was swollen and that he could not bend his middle finger. *Id.* at 14-17, 25-26. Officer Freeman was later diagnosed with a broken finger and a detached tendon. *Id.* Towns was subsequently arrested.

Prior to trial, Towns challenged the legality of "the stop," contending that the entire interaction between the police and Towns was illegal. N.T., 8/10/2017, at 13. Officer Freeman testified during the suppression hearing. *Id.* at 14-29. The trial court denied the suppression motion, explaining its reasoning as follows:

> This is a unique case; the facts and circumstances of the case, but at 4:25 in the morning, the officers are patrolling the Fairmount Park area, they are driving through the lot and they see a car that

is isolated in an area, so as they drive by it, they see two bodies inside the vehicle that are not moving.

I would akin this more to a safety check than a stop. You know, when you pull up on a vehicle when there's no lighting, you have to illuminate it. When you illuminate it and you see two people in there that are not moving.

I can only imagine if the officers just left and they were critically ill and died and they didn't get medical attention, what we would be hearing now. I think it would have been negligent of the officers to pull away with two bodies laying in a car that were not moving without ensuring the safety of those individuals, so I don't akin this to a stop. It's more of a safety check. And they have the right to see if those people need medical aide or are moving because it's not normal for people at that time to be sleeping in a vehicle in a public park so they're not moving and the officers see that. That's part of what their job is, to ensure public safety.

After they knock and the windows come down and the smell that they get, whatever that leads to it leads to, but I don't akin that this was an improper, that everyone's been calling it a stop, because I don't believe it was a stop. The vehicle was stopped and it was more of a safety check and I think that part of it was proper[.]

*Id.* at 39-40.

On November 13, 2017, Towns waived a jury trial and immediately proceeded to a bench trial. N.T., 11/13/2017, at 3. Officer Freeman also testified during trial. *Id.* at 8-26. At the conclusion of trial, Towns was convicted of the aforementioned charges.

On December 29, 2017, Towns moved for reconsideration of the suppression ruling based upon the case of ***Commonwealth v. Livingstone***, 174 A.3d 609 (Pa. Nov. 27, 2017), which had been decided by the Supreme

J-S53028-18

Court of Pennsylvania after the initial suppression hearing. The trial court

concluded:

> [I]t wasn't actually a stop. It was an investigatory inquiry in my opinion. Because you can't in today's climate see two people that could be sleeping, passed out, or dead, in a car in a public place, not moving, at that time of the morning. And as I said I think it would be criminal or negligent for officers not to do that. And all they did is what any normal person would do, try to arouse the passengers inside the vehicle.
>
> And it went from knocking to banging before they could arouse, and then immediately when the window is down, the marijuana which then takes it to another level.
>
> If the **Livingstone** case were to apply, the **Livingstone** case, the officer pulled up beside a woman who was on her phone looked like she was putting directions into her navigation. The officer pulled up beside her with his lights on, on a dark isolated road, and the Court deemed that to be a stop. That she wasn't free to leave because the lights and sirens and things like that. Whether I agree with that or not is of no importance, but for the purposes of today, and being today is my last day here, I am going to deny your motion for extraordinary relief because I don't believe **Livingstone** in this case applies based on the facts as were relayed in the motion to suppress.

N.T., 12/29/2017, at 8-9.

Prior to imposing sentence, the trial court clarified that it "did[ not] find

that the car was used as a weapon in this case." **Id.** at 11.

The trial court then sentenced Towns. This appeal followed.[2]

_____

[2] On December 29, 2017, immediately following sentencing, Towns filed his notice of appeal and concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court did not file an opinion pursuant to Pa.R.A.P. 1925(a), because the trial judge "is no longer sitting as a judge in Philadelphia County[.]" Letter from Penelope Graves to Super. Ct. Prothonotary (Feb. 16, 2017). However, the trial judge did enter his findings of fact and legal conclusions on the record immediately following the testimony

Towns raises the following issues on appeal:

[1.] Whether the [trial c]ourt properly denied Mr. Towns' motion to suppress by concluding that there was no stop and in any event that the community caretaker doctrine applied?

[2.] Whether the evidence was insufficient to support a conviction for Aggravated Assault (18 Pa.C.S. § 2702(a)(3)) in that the evidence failed to establish the requisite mental state, i.e., that Michael Towns attempted to inflict bodily injury, or that he acted intentionally or knowingly in doing so?

[3.] Whether the evidence was insufficient to support a conviction for Aggravated Assault (18 Pa.C.S. § 2702(a)(3)) because the Commonwealth failed to prove the requisite causal relationship between Mr. Towns' conduct and Officer Freeman's injury where Officer Freeman conceded that he lunged at Mr. Towns first and further that he realized he was injured after the entire interaction was over and was thus speculating as to the actual cause of the injury?

Towns' Brief at 10 (issues re-ordered to facilitate disposition).

During the suppression hearing, Towns argued the initial interaction between himself and the officers was illegal. *See* N.T., 8/10/2017, at 13-14. Towns renewed his argument that the trial court erred when it denied his motion to suppress in his appellate brief. *See* Towns' Brief at 14-18. Towns argues that the trial court "misapplied the community caretaker doctrine as Officer Freeman was primarily motivated by a desire to investigate criminal activity and the Commonwealth failed to adduce specific, objective, and

_____

presented at the suppression hearing, as quoted above. N.T., 8/10/2017, at 39-40.

- 5 -

articulable facts that would reasonably suggest Mr. Towns needed assistance."
*Id.* at 14.

"In reviewing the denial of a suppression motion, our role is to determine[] whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct[.]" *Commonwealth v. Thran*, 185 A.3d 1041, 1043 (Pa. Super. 2018) (citations omitted; some formatting). "Our scope of review is limited to the evidence presented at the suppression hearing." *Id.* (citation omitted).

In *Livingstone*, 174 A.3d 609, the Pennsylvania Supreme Court considered the community caretaking exception to the warrant requirement:

> The community caretaking doctrine has been characterized as encompassing three specific exceptions: the emergency aid exception; the automobile impoundment/inventory exception; and the public servant exception, also sometimes referred to as the public safety exception. . . . Each of the exceptions contemplates that the police officer's actions be motivated by a desire to render aid or assistance, rather than the investigation of criminal activity. . . . Specifically, we first hold that, in order for the public servant exception of the community caretaking doctrine to apply, police officers must be able to point to specific, objective, and articulable facts that would reasonably suggest to an experienced officer that a citizen is in need of assistance. . . . Second, we hold that, in order for the public servant exception of the community caretaking doctrine to apply, the police caretaking action must be independent from the detection, investigation, and acquisition of criminal evidence.

*Id.* at 626-627, 634-635 (citation omitted).

Here, the record reflects the "police officers [were] able to point to specific, objective, and articulable facts that would reasonably suggest to an experienced officer that a citizen is in need of assistance." *Id.* at 634. During

the suppression hearing, Officer Freeman testified that, at 4:25 a.m., he saw two people unconscious in an automobile in a remote section of a parking lot, about 150 feet away from any other car.  N.T., 8/10/2017, at 16-18, 28.

In addition, "the police caretaking action [was] independent from the detection, investigation, and acquisition of criminal evidence." *Livingstone*, 174 A.3d at 635.  During the suppression hearing, when asked why he knocked on the window, Officer Freeman explained:  "[T]he two males were unconscious[.] . . . They could have left the car on, they could have been inhaling carbon monoxide.  We wanted to check on their well-being to make sure they were all right."  N.T., 8/10/2017, at 28-29.  Officer Freeman testified he did not see anything illegal in Towns' automobile prior to or while knocking. *Id.* at 27-28.  Officer Freeman also articulated a rationale for approaching and rapping on Towns' car that was distinct from the officers' reasons for being in that section of Fairmount Park,[3] which Officer Freeman explained was a high-crime area with "a lot of drug activity [and] prostitution[.]"  *Id.* at 17. Accordingly, based on the testimony of Officer Freeman at the suppression hearing, we would conclude the trial court did not err in denying Towns' motion, because the community caretaking doctrine applied to the officers' actions in approaching and tapping on Towns' automobile.

_____

[3]  N.T., 8/10/2017, at 16.

Next, Towns challenges the sufficiency of the evidence to support his conviction for aggravated assault[4] pursuant to 18 Pa.C.S. § 2702(a)(3). "A person is guilty of aggravated assault if he . . . attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty[.]" *Id.* Subsection (c) includes police officers. 18 Pa.C.S. § 2702(c)(1). "[I]ntentionally" and "knowingly" are defined as follows:

> (1) A person acts intentionally with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
> >
> > (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.
>
> (2) A person acts knowingly with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
> >
> > (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

---

[4] The lack of an opinion by the trial court pursuant to Pa.R.A.P. 1925(a) does not hinder our analysis of the sufficiency of the evidence, including the element of causation.

18 Pa.C.S. § 302(b). Lastly, 18 Pa.C.S. § 2301 defines "bodily injury" as "impairment of physical condition or substantial pain."

Towns contends "the evidence failed to establish *mens rea* and causation[,]" because he only "placed his hands on Officer Freeman's chest." Towns' Brief at 20, 22; *see also id.* at 24 (evidence was insufficient "to establish a causal result between [his] conduct and Officer Freeman's injuries").[5] Relying upon *Commonwealth v. Rementer*, 598 A.2d 1300, 1307 (Pa. Super. 1991), for the principle that foreseeability is necessary to establish causation, Towns further contends that, "even if [his] conduct was an antecedent to Officer Freeman's injuries, it is simply unfair to attach criminal liability under these circumstances[,]" because "the result here (bodily injury) was not a foreseeable consequence of [his] conduct." Towns' Brief at 28. He argues that he did not intentionally or knowingly cause Officer Freeman's injury, because his "intention was to flee. He did not intend to harm Officer Freeman. The actual harm - bodily injury - was entirely different than that which was contemplated -- a thwarted arrest." *Id.* at 29.[6]

---

[5] Towns does not challenge the sufficiency of the evidence as to his convictions for simple assault or resisting arrest; he also does not contest that Officer Freeman suffered bodily injury. *See generally* Towns's Brief.

[6] The Commonwealth responded to Towns' argument with the following: "Given these facts, the evidence is sufficient to prove that [Towns] intended to cause injury or knew that an injury was 'practically certain' when he struck the officer in the chest with both hands with enough force to break the officer's grip in his attempt to flee. 18 Pa.C.S.A. § 302(b)(2)(ii)." Commonwealth's Brief at 24.

In reviewing the sufficiency of the evidence, our standard of review is as follows:

Whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. . . . Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fortson*, 165 A.3d 10, 14–15 (Pa. Super.) (citation and internal brackets omitted) (some formatting), *appeal denied*, 174 A.3d 558 (Pa. 2017).

"In order to impose criminal liability, causation must be direct and substantial." *Commonwealth v. Fabian*, 60 A.3d 146, 152 (Pa. Super. 2013) (citation omitted).

In *Rementer*, we set forth a two-part test for determining criminal causation. First, the defendant's conduct must be an antecedent, but for which the result in question would not have occurred. *Rementer*, 598 A.2d at 1305; 18 Pa.C.S.A. § 303(a)(1). . . . . [T]here must exist a "causal connection between the conduct and the result of conduct; and causal connection requires something more than mere coincidence as to time and place." *Rementer*, 598 A.2d at 1305, n.3 (*quoting* LaFave and Scott, *Substantive Criminal Law,* Vol. 1, Ch. 3., at 391–392 (1986)). Second, the results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible. *Rementer*, 598 A.2d at 1305.

*Commonwealth v. Spotti*, 94 A.3d 367, 375 (Pa. Super. 2014) (*en banc*).

Pursuant to the above standard of review – *i.e.*, viewing all the evidence admitted at trial in the light most favorable to the Commonwealth as verdict

- 10 -

winner, *see Fortson*, 165 A.3d at 14–15, we agree with the Commonwealth's rationale. *See* Commonwealth's Brief at 23-24. There is no debate as to when the injury occurred; during his trial testimony, Officer Freeman described the altercation between himself and Towns, repeatedly stating that his finger was broken and the tendon was torn "when" Towns spun around and shoved him with two hands in the chest to break his grip:

> I attempted to grab the . . . back of [Towns'] shirt with my right hand. In doing so, the shirt wrapped around my right finger and we got into like a brief struggle and he turned around and pushed me and that's **when** my finger, the tendon snapped off the bone. . . . He kind of spun around causing the shirt to wrap around my fingers and my hand got stuck, that's **when** he kind of like shoved me, and the shirt was still stuck on my finger, causing it to break.

N.T., 11/13/2017, at 13 (emphasis added). Officer Freeman was able to describe when and how his injury occurred, as there was no intervening incident that could have caused it. Furthermore, both prongs of the *Rementer* test were established. *See Spotti*, 94 A.3d at 375. Towns twisted and shoved Officer Freeman, which was the antecedent "but for" cause to the broken finger and torn tendon. N.T., 11/13/2017, at 13-14, 21. Consequently, his conduct was the direct and substantial factor that caused Officer Freeman's injury. *See Fabian*, 60 A.3d at 152. Accordingly, the evidence was sufficient to enable the trial court, as fact-finder, to find the element of causation beyond a reasonable doubt. *See Fortson*, 165 A.3d at 14–15.

As for Towns' assertion that he could not have acted intentionally or knowingly because Officer Freeman's injury was not foreseeable, Towns' Brief at 28-29, this challenge also lacks merit.

> [I]n a prosecution for aggravated assault on an officer[,] the Commonwealth has no obligation to establish that the officer actually suffered a bodily injury; rather, the Commonwealth must establish only an attempt to inflict bodily injury, and this intent may be shown by circumstances which reasonably suggest that [an appellant] intended to cause injury.

*Commonwealth v. Rahman*, 75 A.3d 497, 502 (Pa. Super. 2013) (quotation marks, quotation, and emphasis omitted). Moreover, "[a] person acts intentionally with respect to a material aspect of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i). "'As intent is a subjective frame of mind, it is of necessity difficult of direct proof.'" *Commonwealth v. Matthew*, 909 A.2d 1254, 1257 (Pa. 2006) (citations omitted).

Here, as provided above, while Officer Freeman was attempting to seize Towns, Towns tried to flee on foot, but the officer grabbed the back of Towns' shirt and then the two men engaged in a struggle, in which Towns placed his hands on the officer, pushed him, and subsequently escaped. *See* N.T., 11/13/2017, at 13-14, 21. The officer's finger was caught in Towns' shirt and as a result of the struggle, the officer suffered a broken finger. Based on these circumstances, one can reasonably infer that it was Towns' intention not only

to flee, as he acknowledges,[7] but, more importantly, to not be apprehended at any cost, even if that meant hurting, including inflicting "substantial pain" on, Officer Freeman. **See** 18 Pa.C.S. § 2301. Moreover, it was "[Towns'] conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i). Indeed, Towns intentionally shoved Officer Freeman while the officer's hand was caught in his shirt so that Towns' escape would not be hindered by the officer, who was acting in accordance with his official duty in attempting to stop Towns. Accordingly, the judge, sitting as fact-finder, could reasonably infer from these circumstances that Towns intended to cause bodily injury for purposes of finding him guilty of aggravated assault under Subsection 2702(a)(3).[8]

Based on the foregoing, we affirm the trial court's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/24/18

---

[7] **See** Towns' Brief at 29.

[8] **See Commonwealth v. Butler**, 512 A.2d 667) (Pa. Super. 1986) (concluding sufficient evidence to affirm appellant's aggravated assault conviction with respect to police officer where appellant punched officer one time, without causing bodily injury, and even though he alleged "intent was not to injure the officer but to flee the scene.").