J-A28025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHRISTIAN MALDONADO | : | No. 878 EDA 2023 |

Appeal from the Order Entered February 28, 2023
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0006573-2022

BEFORE: OLSON, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.: **FILED MARCH 12, 2024**

The Commonwealth seeks interlocutory review of an order entered by the Court of Common Pleas of Philadelphia County (suppression court), which excluded a firearm abandoned by Christian Maldonado (Appellee) during his flight from police.[1] Following an evidentiary hearing, the suppression court ruled that the weapon was inadmissible at trial because police recovered it only after attempting to unlawfully seize Appellee. The Commonwealth now argues that the ruling was erroneous because police had the requisite degree of suspicion of criminal activity to detain Appellee prior to the firearm's abandonment. Finding no merit in the Commonwealth's claim, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth has certified in its notice of appeal that the suppression court's order will terminate or substantially handicap the prosecution of this case. Accordingly, under Pa.R.A.P. 311(d), the order is immediately appealable.

The pertinent case facts have been summarized by the suppression court as follows:

> Officer McGrody was on routine patrol in an unmarked vehicle when he encountered Appellee and had received no information specific to an individual or crime. The Officer first noticed Appellee simply walking on the sidewalk of the west side of Glendale Street wearing a black satchel across his shoulder/chest area. Officer McGrody observed: "to me that satchel looked like it had weight to it" but conceded he could not see any shape or form and did not know how much stuff Appellee could be carrying. Further, there was no indication in the testimony that Appellee touched or manipulated the satchel. The Officer admitted Appellee was not engaged in any criminal activity.
>
> Appellee looks in the direction of the unmarked vehicle and walks away after which the unmarked car **follow[ed] him**.  Appellee continue[d] to walk and look back several times at the unmarked car following him. Appellee encounter[ed] an unidentified male from whom, he obtain[ed] a bicycle. Appellee beg[an] riding the bicycle, and the unmarked car continue[d] to pursue him on to a one-way street then activating the police lights halfway down the block.
>
> ****
>
> Essentially, Appellee was being followed, then subsequently chased by an unmarked, unidentified car, at nighttime, in a high crime neighborhood - 30 to 40 feet away. . . . Only towards the latter end of the pursuit did the officers suddenly reveal their identity by activating the police vehicle's red and blue lights located in the patrol car's windshield. Thus, Appellee's continued period of flight was compelled down the one-way street before the actual disclosure that the car was a police vehicle. Further, Officer McGrody's testimony failed to provide specific and articulable facts to support a belief that Appellee was involved in any criminal activity. Appellee was merely walking down the street wearing a satchel when he was suddenly followed by an unknown vehicle at night. Additionally, there is no evidence the bicycle was obtained by force or without permission to indicate it was stolen by Appellee.

Suppression Court 1925(a) Opinion, 6/6/2023, at 5-7 (record citations omitted, emphasis in original).

The above-described chase ended when Appellee crashed the bicycle he was riding. Police apprehended him and recovered the satchel Appellee had discarded. The satchel contained a firearm, and Appellee was subsequently charged with three gun-related offenses. Appellee moved to suppress the firearm on the ground that police recovered it during an illegal detention.

A suppression hearing was held on February 28, 2023, and the sole witness was Officer McGrody. In addition to the officer's testimony, the Commonwealth introduced his body-camera footage of the incident. At the conclusion of the hearing, the suppression court ruled that the firearm would be excluded from trial because the police lacked reasonable suspicion that they had observed Appellee committing a crime. *See* Suppression Hearing Transcript, 2/28/2023, at 55-56. The Commonwealth timely appealed that ruling, and the suppression court filed a 1925(a) opinion giving the reasons why its order should be affirmed. *See* Suppression Court 1925(a) Opinion, 6/6/2023, at 5-7.

In it's brief, the Commonwealth maintains that the firearm was erroneously suppressed because police lawfully detained Appellee after they saw him steal a bicycle and take flight in a high-crime area. The Commonwealth points out further that the police had legal grounds to detain Appellee once he committed a traffic infraction by riding the bicycle the wrong

way down a one-way street. Appellee did not file an appellate brief in response.

Review of a suppression court's order is "limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." **Commonwealth v. Yandamuri**, 159 A.3d 503, 516 (Pa. 2017). The suppression court's factual findings are binding on this Court if they are supported by the record. **Id**. Conclusions of law, however, are reviewed *de novo*. **Id**.

In Pennsylvania, there are three recognized categories of police-citizen interaction. **See generally Commonwealth v. Young**, 162 A.3d 524, 528 (Pa. Super. 2017). The first category is an informal encounter in which an officer requires no suspicion of criminal activity to approach a citizen, who in turn is free at any time to terminate the encounter. **See id**.; **see also Commonwealth v. Thran**, 185 A.3d 1041, 1044 (Pa. Super. 2018) (describing such interactions alternatively as a "mere encounter," an "investigative detention," or a "custodial detention.").

The second category is an "investigative detention," in which a citizen is compelled under the circumstances to stop and respond to an officer. **See Commonwealth v. Fuller**, 940 A.2d 476, 479 (Pa. Super. 2007). Such circumstances include those where a reasonable person would not feel free to leave due to an officer's "physical force or show of authority," or a restriction on the person's movement. **Commonwealth v. Newsome**, 170 A.3d 1151, 1155 (Pa. Super. 2017).

To justify an investigative detention, law enforcement must have "reasonable suspicion" of unlawful activity at the outset. *See Commonwealth v. Hicks*, 208 A.3d 916, 927 (Pa. 2019). Reasonable suspicion may be drawn from the totality of the circumstances, and it exists where detaining officers have a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *In re D.M.*, 781 A.2d 1161, 11663 (Pa. 2001) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

The third type of encounter is a custodial detention. *See Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014). Such an encounter amounts to an arrest which must be supported by probable cause that a crime has been committed. *See Commonwealth v. Fuller*, 940 A.2d 476, 479 (Pa. Super. 2017).

Where police lack either reasonable suspicion for an investigative detention or probable cause for an arrest, contraband discarded by an individual taking flight from police must be suppressed. *See Commonwealth v. Matos*, 672 A.2d 769 (Pa. 1996). "Prior to the acquisition of any evidence arising from an investigative detention, the seizure of a person must be 'justified at its inception.'" *Hicks*, 208 A.3d at 932 (quoting *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

The crux of the Commonwealth's argument on appeal is that the suppression court arrived at incorrect legal conclusions by making factual determinations that are not supported by the record. According to the

Commonwealth, the evidence adduced at the suppression hearing established that Appellee did not discard the weapon until after police had already seen him commit a crime that would justify a detention. The Commonwealth argues that, while in a "high-crime area," police observed Appellee steal a bicycle and then take flight going the wrong way down a one-way street, giving them reasonable suspicion that crime was afoot and rendering the discarded firearm legally obtained thereafter.

On these points, the suppression court's interpretation of the evidence differs from that of the Commonwealth in several key respects. First, the suppression court determined that police initially failed to observe Appellee engaged in any illegality, and "there is no evidence the bicycle was obtained by force or without permission[]." Suppression Court 1925(a) Opinion, 6/6/2023, at 6.

Second, the suppression court found that police began following Appellee without having observed a crime, and without making themselves known as police. A person's unprovoked flight from police in a high-crime area may only give police reasonable suspicion that a crime was committed if the person "knew he was running from the police." *Commonwealth v. Washington*, 51 A.3d 895, 898-899 (Pa. Super. 2012) (reasonable suspicion arises from unprovoked flight in a high crime area in "prior cases in which the facts clearly show the defendant fled from individuals who were recognizable as police.").

Third, the suppression court reasoned that the pursuit of Appellee was already underway when the police car's red and blue lights were activated, at which time Appellee was fleeing from an unlawful detention. *See Matos*, 672 A.2d at 771. (explaining that where officers' pursuit of an individual is an unlawful seizure, the property abandoned by the individual taking flight is "coerced" and cannot retroactively justify a detention).

We have reviewed the record and find that the record supports the suppression court's findings of fact, as well as the resulting legal conclusions. The officer who testified at the suppression hearing admitted that he did not see Appellee committing a crime when he was initially observed in an alley. Police nonetheless followed Appellee in an unmarked police car, prompting Appellee to take flight in the opposite direction.

Although Appellee rode his bike the wrong way down a one-way alley, it is important to note that this was the only route available to him once the unmarked police car blocked the other side of the alley. To the extent that Appellee committed a traffic offense in the presence of police, it would not justify a detention because the arresting officers themselves provoked that conduct. Once police activated their vehicle's emergency lights, Appellee would have necessarily understood that police were trying to detain him at a time when there was no articulable basis for them to believe that a crime had occurred. *See Commonwealth v. Livingstone*, 174 A.3d 609, 621 (Pa. 2019) ("[A] reasonable person, innocent of any crime, would not interpret the

activation of emergency lights on a police vehicle as a signal that he or she is not free to leave.").

The evidence also supports the factual finding that Appellee did not steal a bicycle in the presence of police. Neither the body-camera footage, nor the testimony at the suppression hearing, establish that Appellee lacked permission to take the bicycle from the person who had been riding it. The evidence showed, rather, that Appellee took the bicycle from an unidentified individual without incident. The record therefore supports the suppression court's finding in that regard.

As all of the suppression court's findings of fact are supported by the record, they are now binding on this Court. It must therefore be inferred from those findings that both Appellee's flight and his abandonment of a weapon were coerced by an unlawful detention. *See Matos*, 672 A.2d at 774-75. Thus, the order granting the suppression of the subject firearm must be upheld.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/12/2024