J-S47033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN E. BUTLER | : | |
| | : | |
| Appellant | : | No. 1237 EDA 2025 |

Appeal from the Judgment of Sentence Entered April 9, 2025
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s):  CP-46-CR-0003407-2024

BEFORE:  PANELLA, P.J.E., OLSON, J., and BECK, J.

MEMORANDUM BY BECK, J.:                       **FILED MARCH 27, 2026**

John E. Butler ("Butler") appeals from the judgment of sentence imposed by the Montgomery County Court of Common Pleas ("trial court") following his convictions of persons not to possess a firearm, possession of a firearm without a license, evading arrest, resisting arrest, and duties at a stop sign.[1]  Butler argues that the trial court erred in denying his motion to suppress the firearm because he was subject to an investigative detention and the police did not have reasonable suspicion to detain him.  We affirm.

The trial court set forth the relevant factual and procedural history:

The Commonwealth charged [Butler] with the aforementioned firearms and motor vehicle offenses following his arrest on June 4, 2024.  Through counsel, [Butler] filed an omnibus pre[]trial motion on July 17, 2024.  [Butler] subsequently retained new

_____

[1] 18 Pa.C.S. §§ 6105(a)(1), 6106(a)(1), 5104.2(a), 5104; 75 Pa.C.S. § 3323(b).

counsel, and this court held a hearing on the suppression motion on January 30, 2025. At that hearing, the Commonwealth presented the testimony of the affiant and arresting officer, Officer Xavier Perez. In summary, Officer Perez testified as follows.

On June 4, 2024, Officer Perez was on routine patrol for the Conshohocken Police Department where he had served as a police officer for ten [] years, and another six [] years as an officer in Philadelphia. [N.T., 1/30/2025], at 11, 15, 26, 27. During Officer Perez's shift, County Dispatch put out a call that a vehicle had struck a male cyclist by the railroad crossing at the Schuylkill River Trail near the intersection of Harry Street and Washington Street in Conshohocken, Montgomery County. *Id.* at 11, 12, 16. En route to the scene, County Dispatch updated the report with additional information that when struck, a handgun dislodged from the cyclist's person and fell onto the striking vehicle's windshield. *Id.* at 11-12, 14-15, 16. Finally, County Dispatch relayed information that the cyclist was heard stating that the police cannot know about the handgun. *Id.* at 12, 15, 17.

Officer Perez arrived first on the scene and observed a gray Acura MDX in the middle of the intersection with a driver inside and assumed that was the striking vehicle. As the officer approached, [Butler] called out, stating that he was the cyclist, he was okay and did not need medical attention. *Id.* at 12, 14, 17, 18. Officer Perez walked toward [Butler], and when he was approximately six [] feet away, based on the dispatch information, the officer advised [Butler] to put his hands up because the officer had reason to believe [Butler] was in possession of a firearm. *Id.* at 11, 20, 21. As [Butler] put his hands up, [Butler] stated that he did not have a firearm and proceeded to turn left, away from the officer. *Id.* at 12, 21, 24, 27, 31; Body-Worn Camera Video, Commonwealth's Exhibit CS-1[]. Officer Perez again advised [Butler] that he would have to search [Butler] because the officer had been informed that [Butler] had a firearm. *Id.* at 13, 32. At that point [Butler] started to run westbound on the railroad tracks, with Officer Perez in pursuit. *Id.* at 13, 23. Eventually, with assistance from an off-duty officer, Officer Perez caught [Butler], placed him [in] a controlled hold, told him not to reach for a firearm, and asked [Butler] where the firearm was. *Id.* at 13-14, 23. [Butler] responded that it was in his back pocket, and Officer Perez retrieved a silver handgun from [Butler]'s back left pocket. *Id.* at 14, 23. The entire incident from Officer Perez's arrival on scene to interacting with and subduing [Butler] lasted

approximately thirty [] to forty [] seconds. ***Id.*** at 20-21, 31; Body-Worn Camera Video[].

Officer Perez testified based on the information that he had received prior to coming into contact with [Butler], and then when [Butler] turned away from him at the mention of a firearm, along with his training and experience, the officer believed [Butler] was armed and dangerous. ***Id.*** at 14-15. On cross examination, Officer Perez testified that he was required to check [Butler] for a possible firearm based upon the information the officers had received on their way to the scene. ***Id.*** at 32. Th[e trial] court found Officer Perez's testimony credible.

After hearing argument and then placing the court's findings of fact and conclusions of law on the record[, ***id.***] at 33-40, the court denied [Butler]'s motion and proceeded to a stipulated bench trial,[2] where this court found [Butler] guilty of all charges. ***Id.*** at 41-58.

The court sentenced [Butler] on April 9, 2025, to an aggregate term of imprisonment of six [] to twelve [] years. [Butler] filed a petition to reconsider [his] sentence on April 11, 2025, which the court denied by order entered on April 15, 2025. On May 6, 2025, [Butler] filed a timely notice of appeal. In response, this court issued an order on May 12, 2025, directing [Butler] to produce a Pa.R.A.P. 1925(b) concise statement of errors, which [Butler] filed on May 27, 2025.

Trial Court Opinion, 7/2/2025, at 1-4 (unnecessary capitalization and parentheses omitted; footnote added).

On appeal, Butler raises the following questions for our review: "Did the court err in denying the suppression of physical evidence where [Butler] was

_____

[2] Notably, the 911 audio call was admitted at trial, following the denial of suppression, and not during the suppression hearing itself. N.T., 1/30/2025, at 53-54. The 911 caller identified herself as the driver in the accident, provided dispatch with location of the accident and the presence of the firearm on the windshield, and Butler can be heard telling the driver to not tell the police about the firearm.

the subject of an investigative detention where the police lacked even reasonable suspicion to detain [Butler?]" Butler's Brief at 8.

In reviewing a trial court's denial of a suppression motion, we must determine

> whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review. Our scope of review is limited to the evidence presented at the suppression hearing.

*Commonwealth v. Mackey*, 177 A.3d 221, 226 (Pa. Super. 2017) (citation omitted; formatting altered).

Butler contends that the trial court erred in denying his suppression motion and the recovered firearm should have been suppressed. Butler's Brief at 13. He notes that no police officer observed him doing anything illegal and the incident did not occur in a high crime area; Officer Perez observed no suspicious movements or any bulges in Butler's clothing when detaining him. *Id.* at 13, 16. He claims that Officer Perez lacked reasonable suspicion that Butler was involved in criminal activity and testified that he intended to search him based on the information he received, establishing that Butler was

- 4 -

detained and not free to leave. *Id.* at 13, 22-23. Butler emphasizes that there was no testimony regarding the reliability of the information provided to the police following the accident. *Id.* at 22. Relying on our Supreme Court's decision in *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019),[3] he asserts that the mere possession of a firearm does not provide reasonable suspicion to support an investigative detention. Butler's Brief at 15-16, 20-22. Alternatively, Butler contends that Officer Perez's "seizure amounted to a custodial arrest rather than an investigative detention." *Id.* at 18.

"Both the Fourth Amendment [to] the United States Constitution and Article [I], Section 8 of the Pennsylvania Constitution guarantee individuals freedom from unreasonable searches and seizures." *Commonwealth v. Duke*, 208 A.3d 465, 470 (Pa. Super. 2019) (citation omitted). "Not every encounter between a law enforcement officer and a citizen constitutes a

_____

[3] In *Hicks*, the Pennsylvania Supreme Court found that there is "no justification for the notion that a police officer may infer criminal activity merely from an individual's possession of a concealed firearm in public." *Hicks*, 208 A.3d at 936. The Court noted that an individual may legally carry a concealed firearm in public if licensed to do so, and that it is impossible to ascertain an individual's licensing status from their appearance. *Id.* at 926, 937. To that end, the Court highlighted the "danger of per se rules, pursuant to which the totality of the circumstances inquiry — the whole picture — is subordinated to the identification of one, single fact." *Id.* at 939; *see also id.* at 947. However, the Court recognized that possession of a firearm can be suspicious and "[a] police officer is entitled to view individuals' conduct in light of the probabilities that criminal activity may be afoot, and indisputably may draw certain common sense conclusions about human behavior." *Id.* at 938 (quotation marks and citation omitted); *see also id.* (rejecting the notion that "possession of a firearm can never be suspicious — it certainly can be") (emphasis omitted).

seizure warranting constitutional protections. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred." ***Commonwealth v. Adams***, 205 A.3d 1195, 1199 (Pa. 2019) (quotation marks and citations omitted).

> We have long recognized three types of interactions that occur between law enforcement and private citizens. The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. This interaction also does not compel the citizen to stop or respond to the officer. A mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way. The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot. The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. A custodial detention also constitutes a seizure.

***Id.*** at 1199-1200 (citations omitted).

An investigative detention, or ***Terry***[4] stop "occurs when a police officer temporarily detains an individual by means of physical force or a show of authority for investigative purposes." ***Commonwealth v. Barnes***, 296 A.3d 52, 60 (Pa. Super. 2023) (quotation marks and citation omitted); ***see also Commonwealth v. Spence***, 290 A.3d 301, 314 (Pa. Super. 2023) ("an investigative detention, by implication, carries an official compulsion to stop

_____

[4] ***Terry v. Ohio***, 392 U.S. 1 (1968).

- 6 -

and respond, but the detention is temporary") (citation omitted). An investigative detention "constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot." *Adams*, 205 A.3d at 1200.

To assess reasonable suspicion, a court examines the totality of the circumstances to determine if there was a particularized, objective basis to stop the person suspected of criminal activity. *See Commonwealth v. Green*, 298 A.3d 1158, 1163 (Pa. Super. 2023). "[A]n investigative detention is constitutionally permissible if an officer identifies specific and articulable facts that led the officer to believe that criminal activity was afoot, considered in light of the officer's training and experience." *Adams*, 205 A.3d at 1205. Reasonable suspicion is not limited to facts that clearly indicate criminal conduct. *Commonwealth v. Lewis*, 343 A.3d 1016, 1029 (Pa. 2025). "Rather, [e]ven a combination of innocent facts, when taken together, may warrant further investigation by the police officer." *Id.* (citation omitted).

This Court has stated the following on the subject of a custodial detention:

> An investigative detention may develop into a custodial detention. The key difference between an investigative and a custodial detention is that the latter involves such coercive conditions as to constitute the functional equivalent of an arrest. The court considers the totality of the circumstances to determine if an encounter is investigatory or custodial.
>
> The numerous factors used to determine whether a detention has evolved into an arrest include the cause for the detention, the detention's length, the detention's location,

whether the suspect was transported against his or her will, whether the police used or threatened force, and the character of the investigative methods used to confirm or dispel the suspicions of police.

***Commonwealth v. James***, 332 A.3d 859, 863 (Pa. Super. 2025) (citation omitted).

Further, "while an officer is prohibited from relying on an unparticularized suspicion or a hunch as a basis for [an investigative detention], he or she may rely on a police radio broadcast if the suspect matches the specific description given by the individual who reported the crime." ***Commonwealth v. Thran***, 185 A.3d 1041, 1046 (Pa. Super. 2018) (cleaned up). "The mere fact that the police receive their information over the police radio does not, of itself, establish or negate the existence of reasonable suspicion." ***Commonwealth v. Bailey***, 947 A.2d 808, 811 (Pa. Super. 2008) (citation omitted).

[I]dentified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances, since a known informant places himself at risk of prosecution for filing a false claim if the tip is untrue, whereas an unknown informant faces no such risk. When an identified third party provides information to the police, we must examine the specificity and reliability of the information provided. The information supplied by the informant must be specific enough to support reasonable suspicion that criminal activity is occurring. To determine whether the information provided is sufficient, we assess the information under the totality of the circumstances. The informer's reliability, veracity, and basis of knowledge are all relevant factors in this analysis.

***Commonwealth v. Washington***, 63 A.3d 797, 803 (Pa. Super. 2013) (citation omitted).

Here, the trial court denied Butler's suppression motion for the following reasons:

> After a thorough review of the totality of the circumstances, this court determined that Officer Perez had articulated a reasonable suspicion that supported an investigatory detention of [Butler] for the safety of everyone present based on the information that he had received prior to arriving on scene. Specifically, while en route to the accident scene where a gray Acura had reportedly struck a male cyclist, County Dispatch updated the initial report with the additional information that when struck, a handgun dislodged from the cyclist's person and fell onto the striking vehicle's windshield. Another County Dispatch call relayed information that the cyclist stated that the police cannot know about the handgun.
>
> On arrival, Officer Perez saw the gray Acura with a driver inside and, more importantly, [Butler] informed the officer that he was the cyclist involved in the accident. Although [Butler] insisted that he was uninjured and wanted to leave the scene, based on Officer Perez's training and experience as well as the information he had received from County Dispatch, he believed that [Butler] was armed and dangerous. As he approached [Butler], the officer explained that he had received a report of a firearm and asked [Butler] to put his hands up. Based upon the report of a firearm and [Butler]'s statement that the police cannot know about the firearm, Officer Perez had the necessary reasonable suspicion to conduct a *Terry* stop. The court concluded that Officer Perez was justified in seeking to conduct a pat down for officer safety as part of the investigative detention. Accordingly, the court properly denied [Butler]'s motion to suppress the handgun retrieved from [Butler]'s back pocket.

Trial Court Opinion, 7/2/2025, at 6-7.

Upon review, we conclude that the trial court's factual findings and legal conclusions are supported by the record. We dispose first with Butler's claim

that the stop somehow rose to the level of a custodial detention—it did not.[5]
The record reflects that Officer Perez initially approached Butler following an accident, and he asked Butler whether he possessed a handgun. The location of the encounter was at the scene of the accident, Officer Perez did not place Butler in restraints, he did not use or threaten force against Butler, and he merely asked Butler questions to confirm the report. Thus, Officer Perez's question did not transform the encounter into a custodial detention. *See James*, 332 A.3d at 863.

We instead agree with the trial court that Officer Perez's stop and questioning of Butler was an investigative detention, as Butler was informed by Officer Perez that he was not free to leave the scene. We must thus determine whether the stop was supported by reasonable suspicion. *See Spence*, 290 A.3d at 314. Unlike in *Hicks*, Butler was not detained solely because he possessed a concealed firearm. Instead, Officer Perez had received information from a radio call that following an accident, Butler's firearm dropped on the windshield of the car, and he stated that the police could not know about the firearm. Upon arriving at the scene, Officer Perez confirmed the contents of the report, observing that an accident had taken place between a gray Acura MDX and a bicycle at Harry and Washington

_____

[5] Butler offers no support, through citation to caselaw or the record, for this argument. *See* Pa.R.A.P. 2119(a) (stating appellant's argument must be supported by "such discussion and citation of authorities as are deemed pertinent").

Streets near the Schuylkill River Trail, and that Butler was the rider of the bicycle. *See Thran*, 185 A.3d at 1046; *see generally Naverette v. California*, 572 U.S. 393, 398-401 (2014) (presuming reliability of tip because caller used 911 emergency system, and caller made near contemporaneous specific accusation that a vehicle with a particular license plate had run the caller off the road).

Taking these circumstances together, the police radio reports based on the 911 call about the accident, Officer Perez's observations upon arriving at the scene, and the reasonable inferences that can be drawn from Butler's statement that the police could not know about the firearm, we conclude that Officer Perez possessed reasonable grounds to believe that Butler was in illegal possession of a firearm. *See Hicks*, 208 A.3d at 938 (noting the totality of the circumstances certainly may include other "common sense conclusions about human behavior"); *cf. Commonwealth v. Rivera*, 311 A.3d 1160, 1165 (Pa. Super. 2024) (a person's possession of a gun does not in itself provide reasonable suspicion of a crime; "[a]bsent some other circumstance giving rise to a suspicion of criminality, a seizure based only on carrying a firearm is unreasonable") (citation and brackets omitted). Thus, the *Terry* stop was supported by reasonable suspicion. *See Adams*, 205 A.3d at 1200. Accordingly, we affirm the trial court's denial of suppression.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/27/2026